G. Atiles Moréu, en su carácter de Administrador del Fondo del Seguro del Estado, recurrente, *v.* La Comisión Industrial de Puerto Rico, etc., demandada; Alejandro Rivera Molina, peticionario ante la Comisión.

Núm. 310.—*Sometido:* Abril 10, 1944.. *Resuelto:* Mayo 29, 1944.

*Hon. Procurador General Interino M. Rodríguez Ramos, G. Benítez Gautier, Procurador General Auxiliar, y Joaquina Pérez Cordero, Angel de Jesús Matos, J. Correa Suárez y A. Sandín del Manzano,* abogados los cuatro últimos del Fondo del Estado, abogados todos del recurrente; *J. Padilla Ginorio,* abogado del obrero, peticionario ante la Comisión.

El Juez Asociado Señor De Jesús emitió la opinión del tribunal.

El 8 de junio de 1943 el obrero Alejandro Rivera Molina, en el curso y como consecuencia de su trabajo de picador de cañas, recibió una herida superficial en el dorso de la mano izquierda. El doctor Marqués, quien fué el que primeramente lo asistió, opinó que la herida debía curarse en tres semanas. Le hizo varias curas, y en el curso de una de ellas observó que se le había formado una úlcera en la herida. Le

aplicó una medicina que según el médico no podía producirle inflamación o irritación. Notando que la úlcera no curaba, y sospechando que el obrero se estaba interviniendo dolosamente con ella, lo envió al Fondo del Seguro del Estado, siendo ingresado en la Clínica San Ildefonso. Allí lo asistió el doctor Comas, quien en octubre 1943 lo dió de alta, curado y sin incapacidad alguna en la mano. Algún tiempo más tarde volvió el obrero al Fondo del Seguro del Estado, siendo examinado por el doctor Molinari, quien encontró que tenía una incapacidad equivalente a la pérdida de un ochenta y cinco por ciento de las funciones fisiológicas de la mano, por no poder contraer los dedos. El doctor Molinari, sin embargo, informó al Administrador que la incapacidad no era consecuencia directa ni indirecta del accidente, y sí el resultado de haberse el obrero maliciosamente inutilizado los dedos manteniéndolos en hiperextensión por un largo período de tiempo. Enterado del informe del doctor Molinari, y antes de que el Administrador dictase su resolución, el obrero apeló para ante la Comisión Industrial. En obsequio a la brevedad de los procedimientos, el Administrador no solicitó la desestimación del recurso por prematuro, y asumió que su resolución sería la misma que proponía el doctor Molinari en su informe. Se procedió a oír la prueba ante el Presidente de la Comisión. Declararon por el Administrador varios médicos y por el obrero el doctor Cordero y el propio obrero. Con excepción del de la Comisión Industrial, doctor Cordero, todos los médicos declararon que ni la herida ni la úlcera afectaron los tendones de la mano, y que por consiguiente la incapacidad se debía exclusivamente a que el obrero dolosamente había mantenido los dedos en hiperextensión por un largo período de tiempo con el fin de inutilizarse, como en efecto se inutilizó, la mano. La declaración del doctor Cordero es algo confusa, pero en resumen, no concurre con la de sus compañeros que declararon por el Administrador.

El Presidente emitió una opinión denegando la compensación, fundándose precisamente en que la incapacidad que tenía el obrero no era consecuencia directa ni indirecta de la lesión sufrida por él en el curso y como consecuencia del empleo. El Comisionado señor Paz Granela emitió una disidente sosteniendo que la inutilidad de la mano debía atribuirse a la lesión recibida en el curso y como consecuencia del empleo, porque antes de recibir la lesión el obrero tenía sus manos en perfecto estado, y el Administrador no había presentado prueba directa para sostener que el obrero intencionalmente había mantenido los dedos de dicha mano en hiperextensión. Concurrió en la opinión disidente el Comisionado señor Herrero, convirtiéndose así la disidente en opinión de la mayoría.

En la vista declaró el obrero negando haberse intervenido con la herida, pero los comisionados que componen la mayoría no vieron ni oyeron declarar al obrero, ni tampoco a los peritos de una y otra parte. Existiendo como existió discrepancia entre los peritos de una y otra parte, la conducta del obrero en la silla testifical pudo ser decisiva a los efectos de dirimir el conflicto en la prueba pericial, pues de haber demostrado él por la forma de declarar, que no estaba diciendo la verdad cuando aseguraba que no se había intervenido con la lesión, necesariamente habría que darle crédito a aquellos peritos que aseguraron que la incapacidad de la mano se debía exclusivamente a los actos ilegales del obrero.

██ Es obvio el error en que incurrió la mayoría de la Comisión al exigir que el Administrador presentase prueba directa de alguien que hubiese visto al obrero interviniéndose con la lesión. Si esa clase de prueba se exigiese, en muy raros casos podría probarse la intervención dolosa, pues el obrero que la realiza, naturalmente, no lleva a efecto su acto ilegal en presencia de alguien que pueda descubrirlo. La existencia de la intervención puede establecerse mediante prueba pericial y las demás circunstancias concurrentes. Es

verdad que como cuestión de derecho los demás comisionados no están obligados a aceptar las conclusiones de hecho a que hubiere llegado aquél ante quien desfiló la evidencia. *Atiles Moréu, Admor.* v. *Comisión Industrial,* 62 D.P.R. 61. Pero habiéndose cometido el error antes apuntado, y existiendo desacuerdo con respecto a la apreciación de la prueba pericial, es de aplicación lo resuelto en *Ortiz* v. *Comisión Industrial,* 58 D.P.R. 278, 279:

"No creemos que los comisionados que no tuvieron la oportunidad de asistir a la vista pública tengan necesariamente que aceptar la apreciación que de la prueba hiciera aquél ante quien se celebró, pero es indiscutible que los que no oyeron ni vieron declarar a los testigos, no están en tan buenas condiciones para apreciar y resolver sobre la credibilidad de los testigos como aquél que presidió la audiencia."

*Procede revocar la resolución recurrida y devolver el caso a la Comisión Industrial para que oyendo de nuevo la prueba ante la Comisión en pleno, dicte la resolución que proceda en armonía con la ley y los hechos probados.*

El Juez Presidente Sr. Travieso no intervino.